United States District Court
Southern District of Texas

**ENTERED**

February 28, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BILL ELLISON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-02271 |
| | § | |
| AVETIS DALDALYAN and VARTEVAR | § | |
| AVETIS DALDALYAN, | § | |
| | § | |
| Defendants. | | |

## ORDER

Before the Court is Defendants Avetis Daldalyan ("Avetis") and Vartevar Avetis Daldalyan's ("Daldalyan") (collectively the "Defendants") Motion to Dismiss Plaintiff Bill Ellison's ("Ellison" or "Plaintiff") First Amended Complaint. (Doc. No. 12).[1] Plaintiff filed a Response in Opposition. (Doc. No. 16), and Defendants filed a Reply. (Doc. No. 21). After considering the motions and the law, the Court **DENIES** Defendants' Motion to Dismiss. (Doc. No. 12).

## I. Background

Ellison brought this action against Defendants to recover costs he spent repairing his 2015 Lamborghini Aventador (the "Aventador"). Ellison is an individual residing in Montgomery County, Texas. Ellison and his wife collect classic and exotic cars and have an Instagram account largely dedicated to their car collection. Defendants are in the business of automotive services, specializing in providing parts and services for exotic cars under the name "Corsaxotics." Defendants live and operate their business in San Fernando, California.

---

[1] Defendants previously filed a Motion to Dismiss Plaintiff's state court petition. Plaintiff subsequently amended their state court petition, which supersedes the Original Petition. Thus, the Court will only address the Motion to Dismiss Plaintiff's First Amended Complaint, and the original Motion to Dismiss (Doc. No. 3) is MOOT.

1

Ellison was driving his Aventador in the Houston, Texas area when the engine suddenly caught fire. The fire was captured on video. The Plaintiff posted videos and photos of the fire and the Aventador's damage on his Instagram account. The images clearly depicted the car, including the logo of Ellison's Texas company on the custom wrap of the Aventador. As alleged, the social media posts became a "community conversation" among Lamborghini and exotic car enthusiasts. Defendants were among the many people who saw the video. After seeing the video online, Vartevar contacted Ellison to inquire about purchasing the Aventador. Ellison refused to sell the car, so Vartevar instead encouraged Ellison send the Aventador to Defendants' shop in California for the needed repairs.

Based upon that call, the car was shipped to California for Defendants to perform the agreed upon repairs. Once the Defendants completed the repairs, Ellison traveled to California to pick up the vehicle. While in California, Ellison drove the vehicle and noticed it quickly overheated. Additionally, there were problems with the parking sensors. Ellison immediately called Vartevar and arranged to have the Aventador towed back to the Defendants' shop for the repairs. Ellison returned back to Texas while Defendants attempted the repairs for the second time.

Subsequently, Defendants contacted Ellison and represented that the repairs were successfully completed. Ellison arranged to have the vehicle shipped back to Texas. When the vehicle arrived in Texas, Ellison claims he was only able to drive the Aventador for less than ten minutes before noticing there was coolant leaking from the coolant reservoir. Ellison then took the vehicle to local mechanics who insisted there was a blown head gasket. Unhappy, Ellison contacted Vartevar. Vartevar insisted the local mechanics were wrong, and arranged to ship the Aventador back to California so he could diagnose the problem. Vartevar allegedly asked Ellison

2

not to let his son (Avetis) know that he was paying for shipping. The car was taken back to California and the Defendants allegedly addressed the problems.

Again, the Defendants contacted Ellison to advise him the repairs were finished and that there were no longer issues with the car. After the car was shipped back to Texas, Ellison immediately noticed ongoing problems, such as issues with the parking sensors, the lower radiator hose blowing off, wires twisted together, and portions of the front bumper being zip tied to the vehicle. Ellison, again, took the vehicle to a local repair shop where the mechanics told him there were numerous problems with the vehicle.

Instead of allowing Defendants to attempt to repair the car for the fourth time, Ellison sued Defendants in Texas state court for $81,797.35 (the total costs involved in the repairs). Defendants subsequently removed the case to this Court on diversity of citizenship grounds, and filed their Motion to Dismiss, arguing the Court does not have personal jurisdiction over the Defendants. In response, Plaintiff filed an Amended Complaint, claiming breach of warranty, violations of the Texas Deceptive Trade and Practices Act ("DTPA"), breach of contract, and fraudulent inducement against Vartevar Avetis and a single claim for alleged DTPA violations against Avetis.

Defendants in turn filed a Motion to Dismiss Plaintiff's First Amended Complaint, contending the Court does not have personal jurisdiction over the Defendants, or, in the alternative, that Ellison does not state a fraudulent inducement claim for which relief may be granted. (Doc. No. 12). The Court begins its analysis with Defendants' first argument—that the Court lacks personal jurisdiction over them.

## II. Personal Jurisdiction Legal Standard

When a district court rules on a Rule 12(b)(2) motion without a hearing, the plaintiff must make a prima facie showing of jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602,

3

609 (5th Cir. 2008). The court may consider the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Generally, the court accepts the plaintiff's non-conclusory, uncontroverted allegations as true and resolves conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

A federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with Fourteenth Amendment to the United States Constitution. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The two-part jurisdictional inquiry collapses into a single step in this forum because the Texas long-arm statute extends to the limits of federal due process. Tex. Civ. Prac. & Rem. Code § 17.042; *Johnston*, 523 F.3d at 609; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). To meet the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398.

"Minimum contacts" can give rise to either specific personal jurisdiction or general personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). General personal jurisdiction exists when a non-resident defendant's contacts with the forum state are "substantial, continuous, and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–19, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir.2003). "Random, fortuitous, or attenuated contacts are not sufficient to establish

4

jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir.2007) (citation omitted). Generally, "an individual is subject to general jurisdiction in [his] place of domicile." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

The court "may exercise 'specific' jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The Fifth Circuit has articulated a three-step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The touchstone of the minimum contacts inquiry is whether the defendant's conduct shows that it "reasonably anticipates being haled into court" in the forum state. *Id.*

## III.    Personal Jurisdiction Analysis

First and foremost, the Court acknowledges, and Plaintiff does not contest otherwise, that Defendants are not subject to general personal jurisdiction in the State of Texas. Both Defendants are individuals who are residents of and domiciled in California. (Doc. Nos. 7 at ¶ 3–4, 12-1 at ¶ 2, 12-2 at ¶ 2). "[A]n out-of-state defendant that merely does business with Texas businesses or customers will not be subject to general jurisdiction if the defendant does not have a lasting presence in Texas." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 685 (S.D. Tex. 2014). Plaintiff does not allege, in either his First Amended Complaint or in his Response, that Defendants had such continuous and systematic contacts sufficient to establish general

personal jurisdiction. For that reason, the Court concludes it does not have general personal jurisdiction over Defendants and continues to the specific personal jurisdiction analysis.

Plaintiff argues that the foreign Defendants are subject to Texas' long-arm statute because they "intentionally solicited business, made intentional misrepresentations during the solicitations and subsequent communications, partially performed their obligations in Texas, and reasonably should have foreseen that the effect of their tortious actions would be felt in Texas." (Doc. No. 16 at 5); *See also* Tex. Civ. Prac. & Rem. Code § 17.042(1) ("[A] nonresident does business in this state if the nonresident: (1) contracts . . . with a Texas resident and either party is to perform the contract in whole or in part in this state . . . ."). That fact alone does not necessarily mean the foreign Defendants are subject to this Court's jurisdiction. Rather, the relevant inquiry is still whether the Court's exercise of personal jurisdiction complies with the standards of federal due process. *See, e.g.*, *Johnston*, 523 F.3d at 609; *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558–69 (Tex. 2018) ("The long-arm statute is satisfied by a defendant who commits a tort in whole or in part in this state... However, allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution.") (internal citations and quotations omitted).

As mentioned, due process requires: (1) a defendant purposefully direct its activities or avail itself of the privilege of the forum state; (2) the plaintiff's claims arise out of or relate to the defendant's contacts with the state; and (3) the exercise of personal jurisdiction be fair and reasonable. *See, e.g.*, *Carmona v. Leo Ship Mgmt.*, 924 F.3d 190, 193 (5th Cir. 2019). If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).

Finally, personal jurisdiction is defendant specific, so the Court will address each Defendant's individually. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (holding the requirements of minimum contacts and fairness must be met as to each defendant over whom a court exercises jurisdiction). Further, different tests for minimum contacts apply to different types of claims. *See Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495–96, 500 (5th Cir. 2022) (separately analyzing personal jurisdiction for intentional tort claims and breach-of-contract claims); *see also Ecigrusa LLC v. Silver State Trading LLC*, No. 3:21-CV-1846-B, 2022 WL 1321573, at \*4 (N.D. Tex. May 3, 2022). Thus, the Court will also separately consider the each cause of action.

## A. Avetis Daldalyan

As discussed, Plaintiff only brought one cause of action against Avetis for allegedly violating the DTPA. Defendants contend "Plaintiff has entirely failed to allege any contacts that could subject Avetis to personal jurisdiction in Texas." (Doc. No. 12 at 7). In its Response, Plaintiff disagrees, arguing Avetis has sufficient contacts with Texas to establish specific personal jurisdiction in this Court. (*See* Doc. No. 16 at 16).

### 1. *Minimum Contacts*

The first step of the analysis is to ask whether the Defendant has minimum contacts with Texas, and whether the Plaintiff's cause of action arises out or results from the Defendant's forum-related contacts. Turning to the minimum contacts Plaintiff alleged, Plaintiff contends that Avetis is subject to specific personal jurisdiction in Texas because he made phone calls to Ellison in Texas, and that during those calls he made several misrepresentations about the Aventador in addition to requesting payment for the allegedly faulty repairs. (Doc. No. 7 at ¶ 2, 13).[2]

---

[2] Additionally, in its Response Ellison claims, "Avetis Daldalyan was also the individual who arranged to have the Aventador shipped from Texas back to California so that repairs could be completed on it again" (Doc. No. 16 at 17),

In their Motion, Defendants maintain that "[i]t is well settled that directing telephone calls and communications toward Texas is legally insufficient to give rise to personal jurisdiction." (Doc. No. 12 at 8). In support of that contention Defendants point the Court to a Fifth Circuit case, *Searcy v. Parex Resources, Inc.*, 496 S.W.3d 58 (Tex. 2016). The facts of that case are distinct from those at hand. In that case, the plaintiff sued a Canadian company and an individual for tortious interference with contract and also brought suit against an individual for fraud. *Id.* at 62. Ultimately, the Supreme Court of Texas held that Texas courts did not have jurisdiction over the Canadian company because it did not seek out a Texas seller or Texas assets and it did not attempt to meddle with a contract governed by Texas law. *Id.* at 73. The court expressly stated that, "[t]he Canadian entity's contacts with Texas were too fortuitous and attenuated for the exercise of specific jurisdiction over the entity to be consistent with due process." *Id.* Importantly, in that case, the plaintiff was asserting a tortious interference of contract claim against the Canadian company. Therefore, for the Canadian company's contacts to be sufficient they needed to relate to or arise from the tortious interference claim. Nevertheless, the Supreme Court of Texas held that it did have specific personal jurisdiction over the individual defendant because "the claims against the [the individual] turn on its Texas-based executives' alleged misrepresentations in Texas to a Texas entity." *Id.* at 62. Since the individual faced fraud claims, the misrepresentations made to a Plaintiff in Texas were a key part of those claims and were sufficient to establish personal jurisdiction.

As the Fifth Circuit has held, "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wein*

---

but Plaintiff's First Amended Complaint and Ellison's Declaration state otherwise. (Doc. No. 7 at ¶ 17) ("Mr. Ellison shared these opinions with Vartevar Daldalyan, who, in turn, insisted that both mechanics were wrong. Mr. Daldalyan then arranged to ship the Aventador back to California so he could diagnose and remedy the problem."); (Doc. No. 16-1 at ¶ 9) ("Vartevar Daldalyan insisted that both mechanics were wrong and he arranged to ship the Aventador back to California so he could diagnose and remedy the problem."). For purposes of this motion, given the internal conflict in the Plaintiff's own argument, the Court will not consider this "contact" in consideration of Avetis.

*Air Alaska Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). Defendants contest this rule, arguing DTPA violations are not intentional torts and, therefore, the Fifth Circuit's reasoning in *Wien* should not apply. (Doc. No. 12 at 11). In support of their argument Defendants direct the Court to *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, where the Fifth Circuit was tasked with determining whether an insurance company was obligated to pay under its policy. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008). Albeit, in a different context, the Fifth Circuit stated, "knowing violations of the DTPA are not intentional torts." *Id.* at 402. There is no indication that the Fifth Circuit intended this reasoning to apply in the personal jurisdiction context. Rather, the more accurate way to view the *Wein* case, is that the Fifth Circuit specified "intentional torts" in that context because the case involved an intentional tort. It is logical to conclude when the content of communications with a forum gives rise to a cause of action stemming from that same communication, then such conduct constitutes purposeful availment for personal jurisdiction purposes.

Many courts have applied this reasoning. For example, in *Kennard v. Indianapolis Life Insurance Company*, the court held that a single letter containing false representations sent to a Texas resident was sufficient to support the exercise of personal jurisdiction over a nonresident defendant in a case alleging fraud, civil conspiracy, and violations of the DTPA. *See Kennard v. Indianapolis Life Ins. Co.*, No. CIVA 3:05CV1247 G, 2006 WL 3438653 (N.D. Tex. Nov. 13, 2006) ("The record indicates that the plaintiff's underlying causes of action for violation of the Texas Deceptive Trade Practices Act and common law fraud stem from the contents of this single letter from [the defendant] to [the plaintiff]. The court finds that this letter containing the alleged misrepresentations is sufficient to satisfy the minimum contacts requirement for specific personal jurisdiction"). Additionally, in *Centex Energy Corp. v. World Stock Exchange, LLC*, the court held

9

that a plaintiff established a prima facie case for personal jurisdiction where its DTPA claim was based on the defendant's intentional misrepresentations directed at the forum. *See Cantex Energy Corp. v. World Stock Exch., LLC*, No. CIV SA-09-CA-0218-XR, 2009 WL 2407959, at *6 (W.D. Tex. Aug. 4, 2009).

Here, Plaintiff alleges DTPA violations against Avetis. Specifically, the Plaintiff alleges Avetis violated the DTPA by intentionally and/or knowingly representing that the goods or services have some sponsorship, approval, characteristic, uses, and benefits that they do not have; intentionally and/or knowingly representing that the goods or services are of a particular standard, quality, or grade when they are of another; intentionally and/or knowingly failing to disclose information concerning goods or services that was known at the time of the transaction and with the intent to induce a consumer into a transaction which the consumer would not have entered into had the information been disclosed; or intentionally and/or knowingly representing that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced. (Doc. No. 7 at ¶ 28). In his First Amended Complaint, the Plaintiff alleges that "Avetis Daldalyan contacted Mr. Ellison by phone in Texas and told [him] the Aventador repairs were completely finished and that there were no issues with the car." (Doc. No. 7 at ¶ 18). On that same call, Plaintiff claims that Avetis told him that he "had driven the car and tested it to ensure that it was drivable and that there were no fluids leaking." (Doc. No. 7 at ¶ 18). Plaintiff claims that Avetis' statements were misrepresentations that violate the DTPA.

Taking the allegations in Plaintiff's First Amended Complaint as true, the Court concludes Avetis purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state. The Court, therefore, **DENIES** Defendants' Motion to Dismiss as it concerns Avetis.

### 2. Traditional Notions of Fair Play and Substantial Justice

Due process also requires that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398. "Once a plaintiff has established minimum contacts, the burden shifts to defendant to show the assertion of jurisdiction would be unfair. To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Wein Air Alaska, Inc.*, 195 F.3d at 215. The defendant must present a compelling case that some other consideration renders jurisdiction unreasonable. *Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 630 (5th Cir.1999). "It is *rare* to say the assertion is unfair after minimum contacts have been shown." *Id.* (emphasis added). When making this determination the court's primary concerns include "the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, at least where that interest is not adequately protected by the plaintiff's power to choose the forum, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 631 (5th Cir. 1999) citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Avetis has not made, or offered, any showing that litigating this matter in Texas presents an unreasonable burden on him. Texas undoubtedly has a substantial interest in the litigation of these claims against foreign defendants who allegedly used deceptive consumer practices on in-state residents. *See Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir.2001) (stating that maintenance of the action would not offend traditional notions of fair play and substantial justice where a non-resident law firm's actions injured a Texas plaintiff). The plaintiff also has a strong interest in obtaining efficient and convenient relief in their domicile. Admittedly, litigation in Texas places a

11

burden on Avetis. Once minimum contacts are established, however, the interests of the plaintiff and the forum justify an even larger burden on the defendant. *Cantex Energy Corp.*, LLC, 2009 WL 2407959, at *10. Resolving conflict in a light most favorable to the plaintiff, Defendants have not satisfied the burden of showing that the maintenance of this suit in Texas would violate traditional notions of fair play and substantial justice.

The Court, therefore, **DENIES** the Motion to Dismiss for lack of personal jurisdiction as it relates to Avetis Vartevar.

### B. Vartevar Daldalyan

Plaintiff asserted four causes of action against Vartevar. Specifically, Plaintiff brought breach of warranty, DTPA, breach of contract, and fraudulent inducement claims against Vartevar. Since the various causes of actions have different minimum contacts tests, the Court will analyze each of Plaintiff's claims against Vartevar in turn.

1. *DTPA*

As mentioned, the Court finds that the Fifth Circuit's reasoning in *Wein Air Alaska Inc. v. Brandt*, can apply in the context of violations of Texas consumer protection laws under specific circumstances. Particularly, when the actual content of the communications with a forum gives rise to a cause of action, this alone can constitute purposeful availment in certain circumstances.

Here, Plaintiff alleges Defendants had numerous contacts with the forum. Plaintiff explains that when Vartevar first solicited Ellison's business, "he made representations regarding his skill and ability." (Doc. No. 7 at ¶ 33). "Specifically, Mr. Daldalyan reassured Mr. Ellison that he was a well-known and well-respected exotic car mechanic. He even explained that he specialized in Lamborghini repairs and had rebuilt several salvaged Lamborghini Murcielagos." (Doc. No. 7 at ¶ 33). Vartevar encouraged Ellison to ship the vehicle to California so he could install a "like-new"

engine, and he claimed he "had experience doing this type of work, that he was capable of doing this type of work, and that he could completely rehabilitate the Aventador." (Doc. No. 7 at ¶ 33). Ellison alleges Vartevar made these misrepresentations intentionally and/or knowingly in violation of the DTPA. (Doc. No. 7 at ¶ 27).

Considering the factual allegations in Plaintiff's First Amended Complaint as true, as It must in this context, the Court finds Vartevar purposely availed himself of the benefits of the forum state by calling a resident of the forum state and making alleged misrepresentations during those calls.

### 2. *Breach of Contract and Breach of Warranty*

The Court analyzes personal jurisdiction as to breach of warranty and breach of contract claims together. *See Ecigrusa, LLC v. Silver State Trading*, No. 3:21-CV-1846-B at *20 (N.D. Tex. May 3, 2022) (analyzing warranty under contract framework). Defendants and Plaintiff also address the breach of warranty and breach of contract claims using the same framework.

To determine specific personal jurisdiction in a breach of contract case, courts must ask whether the nonresident's forum contacts "were instrumental in the formation of the contract or its breach." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478(1985). In the Fifth Circuit, a court does not have specific personal jurisdiction over a non-resident defendant simply because he entered into and then breached a contract with a resident plaintiff. *First Metro. Church of Houston v. Genesis Grp.*, 616 F. App'x 148, 149 (5th Cir. 2015). Additionally, "[n]egotiating and closing a contract with a forum resident by sending communications into the forum state is insufficient to establish specific personal jurisdiction for a breach of contract claim.'" *First Metro. Church of Houston*, 616 F. App'x at 149; *citing Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir.1985). Rather in order to support specific jurisdiction, the contract must create a "substantial connection"

with the forum. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230 n. 12 (Tex.1991). In determining whether a contract represents a substantial enough connection with the forum state to constitute purposeful availment, courts consider the following factors: (1) prior negotiations; (2) future consequences; (3) the terms of the contract; and (4) the Parties' actual course of dealing. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985).

Plaintiff claims that he entered into an oral agreement with Defendant, and that Vartevar has sufficient contacts with Texas to subject him to personal jurisdiction in the state. Specifically, Plaintiff alleged Vartevar reached out to him on social media, called him to discuss the damage done to the Aventador, offered to purchase the Aventador, offered to sell him a "like-new" engine, offered to repair the Aventador, and at least once arranged to ship the Aventador from Texas back to California for more repairs. (Doc. No. 7). Defendant Vartevar maintains all of the aforementioned "contacts with Texas are based on the mere fortuity that Plaintiff happens to live in Texas, thereby precluding the exercise of specific jurisdiction over Defendants." (Doc. No. 12 at 10–11).

In this case, Vartevar intentionally reached out to a Texas resident with the purpose of establishing a business relationship with him.[3] After reaching out, Vartevar made repeated calls to Ellison in Texas over a period of several weeks to establish the business relationship with him. The parties do not dispute that the purpose of their business arrangement was to fix the Aventador and return it to driving condition so that Plaintiff could utilize the car in Texas. Thus, the parties' arrangement was intended to have effects in Texas. *Gardner v. Forest River, Inc.*, No. 5:17-CV-018-RCL, 2017 WL 2869432 (W.D. Tex. July 5, 2017) ("By [a non-resident defendant] agreeing to sell a motor home that it knew would be used in Texas, [the non-resident defendant] reasonably

---

[3] "After these photographs and video were posted on the Instagram Account, Vartevar Daldalyan reached out to Mr. Ellison on social media and the two eventually exchanged telephone numbers." (Doc. No. 7 at ¶ 10).

should have anticipated that any breach of warranty or contract might subject it to suit in Texas."). For that reason, Vartevar could reasonably anticipate being haled into a Texas court.

In the alternative, if the breach-of-contract claim standing alone is insufficient to establish personal jurisdiction. *Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435 (W.D. Tex. 2007) (finding the breach of contract claim standing alone did not support personal jurisdiction, but the breach of contract claim taken in conjunction with the fraud claim arising from the same set of contacts satisfied personal jurisdiction); *see also S & D Trading Acad., LLC v. AAFIS, Inc.*, 494 F. Supp. 2d 558, 567 (S.D. Tex. 2007) (noting the plaintiff's tort claim was so intertwined with its breach-of-contract claim that due proves would not be offended by an exercise of specific jurisdiction over both claims arising from the same contacts).

### 3. *Fraudulent Inducement*

Defendants also argue Ellison cannot rely upon the assertion of a tort claim to get around a personal jurisdiction hurdle. (Doc. No. 12 at 12). They further contend that the personal jurisdiction inquiry should not turn on "the label Plaintiff chooses to place on the facts he has alleged and the claims he chooses to assert." (Doc. No. 12 at 12).

The law, however, is clear that different tests for minimum contacts apply to different types of claims. *See Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495–96, 500 (5th Cir. 2022). Therefore, at least in part, the Defendants' purposeful availment depends on the form of claim selected by Plaintiff. Here, Plaintiff alleged tort, contract, and statutory claims. Thus, whether the Court has personal jurisdiction does turn on the causes of action Plaintiff asserts.

More than 35 years of Fifth Circuit jurisprudence "holds that a single communication by a nonresident defendant aimed at the forum state is enough to satisfy the purposeful availment requirement of the due process minimum contacts inquiry where the content of the communication

gives rise to a claim of fraud." *Staton Holdings, Inc. v. Hilton Apparel Grp.*, No. 3-07-CV-0383-BD, 2007 WL 1964635, at *4 (N.D. Tex. July 5, 2007). Stated otherwise, the Fifth Circuit has previously explained "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Id.* (giving example if defendant mailed a bomb to a person in Texas it was fortuitous that the victim's zip code was in Texas, but the tortious nature of the directed activity constitutes purposeful availment.).

In a somewhat similar case from the Fifth Circuit, the court held that a single phone call initiated by a nonresident defendant was sufficient to support the exercise of personal jurisdiction. *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332-33 (5th Cir.1982), cert. denied, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). The case was analyzed under Mississippi's long-arm statute[4]; however, Texas Civil Practice and Remedies Code contains nearly identical language.[5] In that case, the Fifth Circuit held the defendant was not denied due process by being subjected to suit in Mississippi because he "initiated the telephone call and allegedly committed an intentional tort." *Brown*, 688 F.2d 328, 334. Fraudulent inducement likewise is an intentional tort. *See Wein Air Alaska Inc.*, 195 F.3d at 213. Thus, Defendants communications with the forum, standing alone, can constitute purposeful availment.

Vartevar directed communications to a Texas resident. Plaintiff's fraudulent inducement claim is based on the content of those communications. Accepting the Plaintiff's allegations as true, as this Court must in this context, Vartevar made several misrepresentations about his skills, experiences, and abilities to rehabilitate the Aventador. Plaintiff has also claimed that the

---

[4] "Any nonresident person ... who shall ... commit a tort in whole or in part in this state against a resident ... of this state ... shall by such act or acts be deemed to be doing business in Mississippi."

[5] Texas Civil Practice and Remedies Code provides that "a nonresident does business in this state if the nonresident: … commits a tort in whole or in part in this state." Tex. Civ. Prac. & Rem. Code § 17.042(2).

16

representations were made intentionally and he "exclusively relied on those representations in entering into an agreement with Mr. Vartevar Daldalyan." (Doc. No. 7 at ¶ 34, 37). These representations were made via phone calls to Texas, and thus, are what gave rise to the intentional tort cause of action.

For that reason, this conduct constitutes purposeful availment for personal jurisdiction purposes.

### 4. *Traditional Notions of Fair Play and Substantial Justice*

Finding Vartevar maintained necessary and sufficient contacts with Texas, the question remains whether exercising jurisdiction over him offends the traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398. "Once a plaintiff has established minimum contacts, the burden shifts to defendant to show the assertion of jurisdiction would be unfair. To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Wein Air Alaska, Inc.*, 195 F.3d at 215. The defendant must present a compelling case that some other consideration render jurisdiction unreasonable. *Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 630 (5th Cir.1999). "It is *rare* to say the assertion is unfair after minimum contacts have been shown." *Id.* (emphasis added). When making this determination the court's primary concerns include "the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, at least where that interest is not adequately protected by the plaintiff's power to choose the forum, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 631 (5th Cir. 1999) citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

17

Like Avetis, Vartevar has not made or offered any reason why litigating this matter in Texas presents an unreasonable burden on him. While he no doubt faces a burden arguing a case in a state he does not reside in, the state of Texas and Ellison as an individual undoubtedly have substantial interest in this matter, and Defendants have not satisfied the burden of showing that the maintenance of this suit in Texas would violate traditional notions of fair play and substantial justice.

The Court, therefore, **DENIES** the Motion to Dismiss for lack of personal jurisdiction as it relates to Vartevar.

## IV.    Failure to State a Claim Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual

18

assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## V. Failure to State a Claim Analysis

In their Motion, Defendant Vartevar expressly states "the nature of [the] Motion's challenge to the fraudulent inducement claim is not the adequacy of Plaintiff's pleadings, but whether the statements alleged are actionable fraud." (Doc. No. 12 at 13). Defendants contend that Plaintiff's remarks in the First Amended Complaint are assertions of opinion or mere puffery, not actionable fraud. (Doc. No. 12 at 13). Ellison disagrees, arguing Vartevar's remarks are more than mere puffery and fraudulently induced Plaintiff to enter into an agreement with him. (Doc. No. 16 at 18).

Fraudulent inducement is a "particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). Additionally, with a fraudulent inducement claim, the elements of fraud must be established. *Id.* at 798–99. "As fraud claims require a plaintiff to prove that his injury arose out of his reliance on a fraudulent misrepresentation, fraudulent inducement claims require plaintiff to prove a misrepresentation; that defendant knew the representation was false and intended to induce plaintiff to enter into the contract through that misrepresentation; that plaintiff actually relied on the misrepresentation in entering into the contract; and that plaintiff's reliance led to plaintiff to suffer an injury through entering into the contract." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012)

To be actionable as fraud, a misrepresentation must concern a material fact. *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995). A pure expression of opinion does not support an action for fraud. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983). Whether a remark is a "fact" or merely an "opinion" depends on the circumstances. In examining the circumstances, courts consider "the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or the future." *Transp. Ins. Co.*, 898 S.W.2d at 276.

In its First Amended Complaint, Ellison asserts Vartevar's alleged misrepresentations were made during various communications, which occurred prior to Ellison agreeing to send the Aventador to Defendants' shop in California. During those communications, Plaintiff asserts that Vartevar "reassured Mr. Ellison that he was a well-known and well-respected exotic car mechanic" and that "he specialized in Lamborghinis." (Doc. No. 7 at ¶ 11). Further, Ellison alleged Vartevar, "encouraged Mr. Ellison to ship the Aventador to California so he could rewire and rebuild the Aventador, thereby repairing the fire damage, in addition to installing the "like-new" engine." (Doc. No. 7 at ¶ 11). "Vartevar claimed to have experience doing his type of work, that he was capable of doing this type of work, and that he could completely rehabilitate the car." (Doc. No. 7 at ¶ 11). Lastly, Vartevar also promised to "rewire and rebuild the Aventador" and to return the vehicle in "drivable condition." (Doc. No. 7 at ¶ 11). Defendants contend these statements are "nothing more than mere sales talk or puffery that cannot support a claim of fraudulent inducement as a matter of law." (Doc. No. 12 at 14). Plaintiff contends that these statements, however, are more than mere puffery; they are promises of performing specific acts. *LVI Facility Servs., Inc. v. Watson Rd. Holding Corp.*, No. A-12-CV-672-LY, 2013 WL 5519588 (W.D. Tex. Oct. 1, 2013), report and recommendation adopted sub nom. *Lvi Facility Servs., Inc. v. Watson Rd. Holding*

20

*Corp.*, No. 1:12-CV-672-LY, 2013 WL 12131201 (W.D. Tex. Dec. 4, 2013) (finding misrepresentations amounted to more than mere puffery when many of the alleged misrepresentations in the plaintiff's fraudulent inducement claim "do not represent opinions, but promises of performing specific acts."). In the motion to dismiss context, the Court must assume all allegations to be true and must interpret the allegations favorably to the pleader. *Sonnier*, 509 F.3d at 675 ("The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."). Therefore, while the Defendant may ultimately prevail on this argument, the Court cannot grant a dismissal at this stage.

Accordingly, the Court denies without prejudice Defendant's Motion to Dismiss as it relates to the fraudulent inducement claim.

## VI. Conclusion

For the foregoing reasons, Defendants Motion to Dismiss (Doc. No. 12) is hereby **DENIED**.

Signed in Houston, Texas this 28 day of February, 2023.

Andrew S. Hanen
United States District Judge